Submitted on record and briefs February 10, affirmed on both appeals April 12, 1995

Paul dePARRIE,
*Appellant,*

*v.*

STATE OF OREGON,
Barbara Roberts, in her capacity as
Governor of the State of Oregon, and
Phil Keisling, in his capacity as
Secretary of State for the State of Oregon,
*Respondents,*

*and*

Senator Dick SPRINGER,
Representative Jim Edmunson and
Representative Gail Shibley,
*Intervenors-Respondents.*

Lon MABON,
a qualified elector,
Loretta Neet, a qualified elector,
David Graham, a qualified elector,
and No Special Rights Committee, PAC,
a political action committee,
*Appellants,*

*v.*

STATE OF OREGON,
Barbara Roberts, Governor,
State of Oregon, and
Phil Keisling, Secretary of State,
State of Oregon,
*Respondents,*

*and*

Senator Dick SPRINGER,
Representative Jim Edmunson and
Representative Gail Shibley,
*Intervenors-Respondents.*

(93C-12326, 93C-12321; CA A83441 (Control), A83455)

893 P2d 541

Paul deParrie filed the briefs *pro se*.

Melanie E. Mansell filed the briefs for appellants Lon Mabon, Loretta Neet, David Graham and No Special Rights Committee, PAC.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Rives Kistler, Assistant Attorney General, filed the brief for respondents.

Charles F. Hinkle filed the brief for intervenors-respondents.

Before Deits, Presiding Judge, and Riggs and De Muniz, Judges.

DEITS, P. J.

## DEITS, P. J.

■ These are appeals by the plaintiffs in two consolidated declaratory judgment actions that were brought, respectively, by plaintiff deParrie and by plaintiffs Mabon, Neet, Graham and No Special Rights Committee, PAC.[1] In both actions, the plaintiffs sought a declaration that ORS 659.165 is invalid. That statute provides:

"(1)   A political subdivision of the state may not enact or enforce any charter provision, ordinance, resolution or policy granting special rights, privileges or treatment to any citizen or group of citizens on account of sexual orientation, or enact or enforce any charter provision, ordinance, resolution or policy that singles out citizens or groups of citizens on account of sexual orientation.

"(2)   Any person who believes that a political subdivision has enacted or is enforcing a charter provision, ordinance, resolution or policy in violation of this section may bring an action in circuit court to have the charter provision, ordinance, resolution or policy declared invalid, for injunctive relief and for such other relief as the court may consider appropriate. The court shall award reasonable attorney fees and costs to a plaintiff who prevails in an action under this subsection."

The trial court first held that deParrie, Mabon and the political action committee lacked standing to assert their claims. However, the court concluded that Neet and Graham have standing because, in addition to sharing the alleged interests of the other plaintiffs, they are voters in cities that have enacted initiative measures that have potential negative effects on the status of homosexual persons and that ORS 659.165 does not permit to be enacted or enforced. On the merits, the trial court rejected all of plaintiffs' bases for challenging the validity of the statute.

deParrie and plaintiffs appeal separately. Both assign error to the trial court's rulings that deParrie, Mabon

---

[1] A third action was consolidated with these at trial, but is not before us on appeal. In the balance of this opinion, except where greater differentiation is required, we will refer to deParrie by name and to the plaintiffs in the other action as "plaintiffs." Defendants are the state, the Governor at the time the actions were brought, and the Secretary of State. Three state legislators appear as intervenors.

and the political action committee lacked standing. Defendants and intervenors cross-assign error to the rulings that Neet and Graham have standing. We turn first to the cross-assignment.

■ Interest as a voter can give rise to standing in a declaratory judgment action. *Eckles v. State of Oregon*, 306 Or 380, 385, 760 P2d 846 (1988); *Webb v. Clatsop Co. School Dist. 3*, 188 Or 324, 215 P2d 368 (1950); *see also Savage v. Munn*, 317 Or 283, 856 P2d 298 (1993). Here, Neet and Graham have had the opportunity to vote on the measures that were adopted by the electors of their cities. *See Boytano v. Fritz*, 131 Or App 466, 886 P2d 31 (1994), *rev allowed* 320 Or 567 (1995). However, the effect of ORS 659.165 is to make the enactments unenforceable and a nullity. We conclude that that fact provides a sufficient connection between the statute and Neet's and Graham's electoral interests to give them standing to challenge the validity of the statute. Because Neet and Graham have standing, and the substantive and litigative positions of the other plaintiffs in the same action are exactly the same as theirs, it is immaterial whether the other plaintiffs independently have standing. *See Thunderbird Motel v. City of Portland*, 40 Or App 697, 702 n 2, 704, 596 P2d 994, *rev den* 287 Or 409 (1979).

■ However, because deParrie is the only plaintiff and appellant in the other action, the issue of his standing must be decided. We again agree with the trial court. Under deParrie's allegations and presentation in the trial proceedings, he does not demonstrate any "injury or other impact on a legally recognized interest beyond an abstract interest in the correct application or the validity of a law." *Budget Rent-A-Car v. Multnomah Co.*, 287 Or 93, 95, 597 P2d 1232 (1979). Therefore, we conclude that he does not have standing, and we affirm the judgment against him.

■ We turn to the merits of plaintiffs' appeal. Their principal argument is that ORS 659.165 is not a "valid preemptive statute" and that it cannot be used, consistently with the Home Rule Amendments to the Oregon Constitution, to prevent "municipalities from establishing substantive policy on the issue of sexual orientation."

In *LaGrande/Astoria v. PERB*, 281 Or 137, 576 P2d 1204, *on rehearing* 284 Or 173, 586 P2d 765 (1978), the court delineated the respective legislative authority of the state legislature and municipalities and, concomitantly, the authority of the legislature to preempt local legislation in areas outside of the criminal law. The court concluded that, in connection with legislation involving matters of "substantive policy,"

> "both municipalities and the state legislature in many cases have enacted laws in pursuit of substantive objectives, each well within its respective authority, that were arguably inconsistent with one another. In such cases, the first inquiry must be whether the local rule in truth is incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive. It is reasonable to interpret local enactments, if possible, to be intended to function consistently with state laws, and equally reasonable to assume that the legislature does not mean to displace local civil or administrative regulation of local conditions by a statewide law unless that intention is apparent. * * * *However, when a local enactment is found incompatible with a state law in an area of substantive policy, the state law will displace the local rule.*" 281 Or at 148-49 (emphasis supplied; footnote and citations omitted).

There is no dispute that the statute here *relates* to a matter of substantive policy. However, plaintiffs contend that ORS 659.165 is not an *expression* of state legislative policy and, therefore, it cannot displace local laws relating to the subject. Plaintiffs argue that, because the statute simply prohibits local legislation without affirmatively regulating the subject or defining what the state's policy is, it does not have a preemptive effect under the *LaGrande/Astoria* rationale. Plaintiffs state that,

> "until the legislature establishes statewide standards on the issue of sexual orientation, it is without authority to preclude the local governments from establishing their own."

Accepting, for sake of argument, the way in which plaintiffs characterize the statute,[2] we nevertheless do not

---

[2] In its letter opinion, the trial court stated that the statute preempts only "anti-homosexual ordinances" but "allow[s] communities to pass what * * * is commonly referred to as pro-homosexual ordinances." That statement is not reflected in the judgment. No party sought a declaration concerning the effect of ORS

accept what we understand to be their central premise: that, to be an expression of substantive policy or to have preemptive effects, a statute must regulate a matter in a directional way. We do not agree that, in order to rise to the level of a policy choice, a statute must regulate particular persons or subjects in either a positive or negative manner; it is just as much a substantive policy of the state if the legislature prohibits *any* regulation of particular persons or matters, or defines the extent to which they may be regulated, as if the legislature itself regulates the persons or matters in a particular manner. In both situations, the legislature has established a state policy concerning the regulation of a subject. To the extent that plaintiffs' argument is that the statute fails to establish a state policy because it does not say enough, we again disagree. If the policy of a statute is simply to preclude or limit regulation of a subject, there is nothing that it needs to or can say beyond what ORS 659.165 does say.

We conclude that ORS 659.165 validly and effectively preempts local legislation of the kind that it describes. Such local legislation is *ipso facto* in conflict with the statute, because the statute prohibits the legislation. For the same reason, the defined local legislation "cannot operate concurrently" with the statute. It is also clear that "the legislature meant its law to be exclusive"; the entire purpose of the statute is exclusionary.

Plaintiffs also argue that the people are "colegislators" of the Legislative Assembly, via the initiative and referendum powers, and that:

> "By enactment of ORS 659.165, one legislative body has basically attacked the other legislative body. In this case, the Legislative Assembly, unable itself to substantively address the issue of sexual orientation, has concluded that the other legislative body, i.e., *the people of this State*, are also incapable of substantively addressing this issue. Therefore, the Legislative Assembly has attempted to preclude *local legislation by the people* on the issue of sexual orientation. This it cannot do." (Emphasis supplied.)

As the emphasis we have added to plaintiffs' text shows, their argument is misfocused. We might agree that the

---

659.165 on "pro-homosexual" local legislation, and we expressly note that this case does not provide an occasion for construing the statute in that regard.

legislature cannot prevent the people of the state as a whole from exercising initiative and referendum rights to enact or reject *state* statutes. However, that is not what ORS 659.165 does. It preempts the enactment or enforcement of certain *local* legislation. Its preemptive effect does and may apply to all local legislation on the subject, whether it is adopted by the local legislative body or the local voters. *City of Roseburg v. Roseburg City Firefighters*, 292 Or 266, 286-87, 639 P2d 90 (1981).

The trial court was correct in holding ORS 659.165 to be valid.

Affirmed on both appeals.